Matthew Bachman, Federal Defender's Office in Sacramento, California, for Darin Panthaky. I anticipate using no more than five minutes or so this morning, giving the rest of the time to Mr. Sine's attorney as he's raised more issues. I should update the Court on the status of my client, Darin Panthaky. On Friday, I learned that he has been released on an immigration bond and is therefore serving his term of supervised release at this time, having been released for about two weeks now. The government's counsel may very well inform this Court that, according to the United States Probation Office, there's been no report from him within 72 hours as required. We don't know that. There's no evidence from probation that that's the case. With that in mind, I thought perhaps I should – Why does that matter? I mean, it's still a direct appeal. There's still supervised release. Why does that matter? That's right. I was just concerned that perhaps there would be some issue in the direct fugitive disentitlement that he's on supervised release at this time. However, in looking at Your Honor's dissent in the Armentero case, this Court has twice declined to use the fugitive disentitlement doctrine when it comes to somebody on supervised release or probation. But this isn't a habeas. No, of course not. It's not a habeas. That doesn't matter at all, does it? Very well. Very well. Maybe I'm confused, but I don't think it matters. I'll move on then. But that's the very sentence that he's serving at this time is his supervised release sentence. Thank you. Turning to the merits and the sufficiency issue, first I would point out that it is not subject to plain error because I did, in fact, renew my motion for judgment of acquittal by joining the Codefinance Rule 29C motion. That was docketed before the district court. The joinder is at number 124, and it was ruled on by the district court. I submit to you that no rational trier of fact could find beyond a reasonable doubt that my client is guilty as charged, even viewing the evidence in the light most favorable to the government. The counts of conviction concern mailings that took place in April of 1999. At that time, there's simply nothing that indicates that my client did not believe that all the investments were guaranteed by PD 18382 forms from the Ginnie Mae Corporation. All of his actions were consistent in that regard in believing that they were, in fact, guaranteed.  Yes, ma'am. And confusing to me was any compensation paid by him or assigned in order to get supposedly get these backings of Ginnie Mae's. In regard to how my client gained possession of these documents in the first place? Well, and was there any evidence that anybody ever paid for them? There was no direct evidence in regard to my client giving consideration for the document that I recall from trial, Your Honor. Yes. So your contention with regard to sufficiency is not connected to the how these particular mailings were connected to the crime, but rather that essentially there wasn't a crime? At that time, my client did not have intent to defraud at the time of these mailings in that he believed that the PD 1832s were, in fact, legitimate and that his investments were covered, and that evidence. But wasn't there a great deal of evidence about that? It may be disputed, but there was a great deal of evidence regarding the fact that essentially nobody could have believed this. Indeed, there was evidence in that regard, Your Honor, yes. So what's the sufficiency problem? Well, there was also evidence that my client relied upon advice of counsel, and the district court advised the jury and instructed the jury in regard to advice of counsel. And I submit that my client reasonably relied upon his co-defendant counsel in regard to the legitimacy of these PD 1832 documents, and that's where my case dovetails into the case of the co-counsel here. Thank you very much. Thank you. If it pleases the Court, Your Honor, Russell Klein on behalf of Defendant Wesley Sign, I would like to reserve two minutes. Wesley Sign was a Utah attorney who had represented Darrell Pantanky as one of his clients. Mr. Pantanky was in the business of he would borrow money to finance various business ventures. Time came when Mr. Pantanky came to Wesley Sign and said, I would like you to hold some security for some loans that I'm making, and you would hold it as a trustee, and in the event of a default, then you would liquidate the security and you would repay the loans. Wesley Sign agreed to do that. The security that was given to him were some assignments of Ginnie Mae Securities from Delmarva Timber Trust to Alpha Funding Group, which was one of Mr. Pantanky's businesses, and in reviewing these, these are also what Mr. Baughman referred to as the PD 1832, and it's the form that these assignments are executed on. And in reviewing these, Mr. Sign, in November of 1992, he made a phone call to a Mr. He says he did. He says he did, correct. And the person for whom he said he spoke says he didn't, so in terms, again, of sufficiency. Right, right. But the issue I'm getting to is an issue that's different than sufficiency. So I would just like to lay the foundation, and that is when he received the PD 1832, he saw that at the bottom there was a signature, Owen Middles had signed on behalf of Delmarva Timber Trust, and in fact that signature was guaranteed by Jeffrey Franklin, who was an officer at United Bank and Trust Company in Maryland. And so when he received these from Pantanky, what he did, he testified at trial. What he did was he called Mr. Franklin and said, I have this PD 1832, and I would like to verify it. In a trial, he testified that he made the phone call, and that, in fact, Franklin verified that not only did Delmarva Timber Trust sign this, but, in fact, Delmarva Timber Trust also owned the Gin and Mane securities that were being signed. Signed in, went ahead and held these, believing that they were genuine. And, in fact, at trial, various witnesses testified as to the fact that Mr. Sign had told him, told them that the reason that he believed that these were legitimate is because he had talked to Mr. Franklin, and Mr. Franklin had assured him that they were. So this is all going to the instruction question, is that what's going on? This is going to the jury instruction question, correct. So your basic contention is that this sentence at the end was a statement denying that the defense. Correct. But in context, I mean, it doesn't seem to me anybody would read it that way. It seems clearly to be talking about the signature guarantee and not about something outside the signature guarantee. Okay. The person guaranteeing the signature, this is after a longer several, a longer paragraph, and then it says the person guaranteeing the signature on the instruction made no warranty that the signer was the registered owner. And the obvious implication, which anybody would get out of there, is by the signature, not by anything else he did. Well, isn't that right out of the statute anyway? It is, Your Honor. If you look at the original statute, in fact, that phrase in the original statute, it's up under subparagraph 2 where you, where it clearly indicates that by signing, in other words, it clearly qualifies that, and that is that by the act of signing, the person guaranteeing the signature on the instruction made no warranty that the signer was the registered owner. What they've done in this case is they've pulled it out, they've rephrased it, they've made it more general. And by that I mean when I say they've made it more general, before when it was up under the subparagraph 2, it was clear that it only referred to by the act of signing, you're not warranting that the person is an owner. But when you pull it out and put it at the bottom, now, if I was a juror and I was reading this and I came to the bottom and I just read the person guaranteeing the signature on the instruction made no warranty that the signer was the registered owner, to me, that's broad enough to include verbal representations, verbal warranties, as well as by the act of signing. The person ---- I'm going to get to that, Your Honor. Yes. I think maybe you should get there sooner rather than later. Okay. Thank you, Your Honor. Okay. Again, it is my position that just to wrap up the instruction number 21, and that is that the issue on that, that a reasonable juror reading that would be that broadly enough to discount any testimony as to Mr. Sine's defense that he had talked to Jeffrey Franklin. Jeffrey Franklin had verified. And, in fact, that's what repeated witnesses said is, yeah, Sine told me that these were good because he had talked to Franklin. Franklin had verified them. Of course, if the jury reads this, the person guaranteeing the signature, which is Franklin, made no warranty that the signer, DeMarva Trust, was the registered owner of the Ginnie Mae's, we're going to go, well, obviously Sine's correct. Sine knew all along that these were wrong or that these were a defective assignment. Now, getting on to the judge in Ohio, that issue, the superseding indictment in this case involved three individuals, and that is there was Renata Lee, Robert Newman, and Clarence Troush, all of whom had loaned money to Pantanke. In their testimony before the Court, two of them, and that is Ms. Lee and Mr. Newman, testified that they, at the time, at or before the time that they had loaned money, they had never talked to Mr. Sine. In fact, it wasn't until a year, over a year after they had loaned the money that Pantanke had made promises to repay. Repayments weren't made. Pantanke disappeared. They knew that Sine was involved, and so they called Sine, and they found out for the first time who he was. Well, they knew who he was before, but they found out for the first time what his role was in this. Clarence Troush testified that prior to investing funds, he had made one call to Mr. Sine, and that Mr. Sine had said nothing about the security. He was reluctant to talk, essentially. There was a phone call that, well, you're here, but there was no representation made as to the security or what Mr. Sine's role was. In fact, most, well, after Mr. Pantanke disappeared, these individuals began to call Mr. Sine, hey, you have the security that is going to repay these loans in the event they're in default. They're in default. Please go ahead and liquidate the security. Up to this time, Mr. Sine thought he had the security. He called Franklin. He had done his, what was in his view, his due diligence. There was a great deal of evidence of other things that Mr. Sine said that was, first of all, there was certainly a fair amount of evidence that he didn't believe in it, but also there was a certain amount of evidence that he said other things, such as that there had never been a default, that these loans had always been paid in some way to other people. I understand not to these particular people, but the scheme of, the fact that he was participating in the scheme overall, there was evidence of that. You're not talking, as I understand it, about a substantial evidence question, so. No. Well, we're talking about the fact that most of the evidence now, there were, I believe, two other witnesses that did testify as to other things that Sine had said. But essentially what I, Sine, his testimony and the testimony that's consistent with it was that he was largely uninvolved when most of these loans were made. It wasn't until the loans went into default, then Tankey disappeared. At that point, people called him. They said liquidate these, and he tried to liquidate them. At this point, most of the testimony in trial involved what Sine did at this particular point in time, and that is he, in Utah, he tried to liquidate, well, first of all, he, in Utah, tried to liquidate these securities. He found out it was defective. He couldn't liquidate it. He then filed a lawsuit against Delmarva Timber Trust and received in Utah a consensual decree where Metals, as the trustee of the trust, had entered into this consensual decree, $18 million against the trust. Sine then tried to locate assets of this trust, located what he thought, based on Joseph Doloch, who testified at trial, based on his investigation, were two companies that were assets of the trust. One was Pauline Company. The other was Heron Company. These were located in Ohio. He went back, tried to execute on these assets. When he executed on these assets, the Bank of New York came in and said, no, those don't belong to Delmarva Trust. They belong to us. There was litigation that was commenced back in Ohio. What happened at this point was essentially that there was ‑‑ Can you please assume that we know what happened? We have evidence by now, okay? That's right. And let's discuss the introduction of the evidence. Introduction of the evidence. The fact that it was not objected to at the time. Yes. And the question of whether it meets a plain error standard. Whether it's erroneous and whether it meets a plain error standard. You only have about six minutes for us to do it. So at this point in time, most of the evidence that was introduced regarding Sine involved Judge Carr in what happened with Judge Carr back in Ohio. In fact, there were 200 references by the government in questioning Sine and other witnesses to Judge Carr. None of which were objected to. None of which were objected to. Were you the lawyer in the district court? I'm sorry? The lawyer in the district court? I was not, no. And there is a claim in here for inefficient ‑‑ insufficiency of representation by counsel. Because essentially what happened was counsel below allowed reams and reams of evidence to come in. For example, during the trial, you know, question, did Mr. Sine ever tell you that a federal judge in Ohio found him guilty of criminal contempt of his actions? Okay. Let's assume that we know what happened. Okay. Thank you. All right. Why was it invalid to introduce the opinion and why was it not ‑‑ why does it meet the plain error standard if it was invalid? Well, sure. It meets the plain error standard because the weight of the evidence against Sine revolved around this, what happened to Judge Carr. And repeatedly, the 200 times, eight times it posed an issue. But why was it error? The first question is why was it error to introduce the ‑‑ Okay. Well, it was error. The questions and the answers. Okay. It's clearly prejudicial, but why is it wrong? Well, it's error. We've outlined its hearsay. It's under Rule 403. Any probative value outweighs the ‑‑ any ‑‑ or the prejudicial value outweighs the probative value. Under Rule 609, which limits ‑‑ this was Judge Carr's ruling was a criminal contempt conviction, under Rule 609. Could this have been introduced just as ‑‑ under a preclusion rule? It was criminal contempt. And he does say over and over again that his findings were beyond a reasonable doubt. So suppose they had done something completely different, which was just to say that this was ‑‑ that these facts were preclusively found against your client. Well, Your Honor, that's not the way that it came into trial. And what I would suggest is that, in fact, they turned Judge Carr into an opinion expert on sign. As is evident in the closing argument, they repeatedly say, well, Judge Carr found, you know, he heard sign. And after he heard sign, he found sign. The sign was a liar. You should do the same thing. Basically, they piggybacked on Carr and used Carr, which I believe is, well, which is indicated in the brief. It's very ‑‑ I mean, Judge Trager, being a trial judge, may have more to say about this. But you have a trial judge sitting there. You have nobody objecting to this. It's not going on a passing. It's going on and on and on and on. On and on and on. That's correct. One could assume that the defendant is a lawyer himself. Defendant is not a criminal lawyer. One could ‑‑ I'm sorry? Defendant is not a criminal lawyer. Defendant is not a trial lawyer. I understand that. But he has a lawyer. And the assumption that somebody has ‑‑ He went to law school, he may have. Yes. He went to law school, but as a practical matter, the word hearsay. As a practical matter, he's not ‑‑ What I'm saying is, it certainly smacks of a decision that somebody made to let this in because the alternatives were worse. How do we know? So how do you factor that into a plenary determination or don't you? Your Honor, as I indicated, I mean, it is a balancing act. In this case, I think it's so egregious that it is plenary. And you have 200 instances where it was brought in eight times. So the judge should have popped up at some point and said ‑‑ Well, either that. I mean, there's an alternative. Either it's plenary or ineffective assistance of counsel. I mean, it's one of the two. Ineffective assistance is down the road. I mean, ordinarily. Right. And that may well be. I mean, that may well be. But as of right now, what do we do with this? You know, I've seen lots of plenary cases. But not usually where it's on and on and on and on and on. And nobody could have missed this. Well, and that's the point. It's so egregious. I mean, that's why we're here on appeal. It's so egregious. That's one possibility. The other possibility is that you read it essentially as an implicit waiver, that this was more than simply something somebody forgot, that they made a concerted decision to let this in because the alternatives were worse. And you'll find that out on the ineffective assistance claim as to why it was done. Well, Your Honor, the argument that we've made is that it was so egregious, there's no way. I mean, Sine was not a trial lawyer. He basically turned his life over to this guy. And this guy just sat on the bench and allowed, you know, not just an inch, but miles and miles and miles of inflammatory, prejudicial, hearsay, all kinds of stuff that should have never come in. He just allowed it all to come in. And here he is, you know, 69 years old, sitting in jail. You know, Panky, the guy that cooked up the scheme, you know, he's out. But Sine has four more years to go. I mean, this guy had a clean record, and here we are. And all I can do is just lay this at the Court's feet and just say there's no way. But the district judge's view is that there was so much adverse evidence that this didn't matter. Have you addressed that? Do you want to briefly address that? Well, and he did say there was so much. And that's why I try to lay the background and say this really was most of the testimony about Sine was Judge Carr. I mean, there were a few things, but he wasn't really involved in the early part of the scheme. It was his attempts to collect. That was most of the testimony. This was most of the testimony, and it was this Judge Carr stuff again and again and again. When you keep hitting him over the head, well, didn't Judge Carr find that you were a liar? On and on and on. And then to the jury, well, Judge Carr found that he was a liar. Then obviously he's a liar here. It is so egregious that under the plain air rule, I mean, this was clearly, as I said, it's either ineffective assistance of counsel or it should be reversed. Thank you very much. Thank you very much. Good morning. If I may please the Court, I'm John Vincent. I'm an assistant United States attorney in Sacramento. I was one of trial counsel. Can you answer the question? I know this is not the 2255. I mean, get this in. You mean if I make a judgment on credibility of a policeman that he's not credible that, you know, the defendants can later offer it, you would jump out of your skin before you would allow that? Your Honor, I believe Judge Berzon hit the nail on the head. I believe this was a tactical decision that defense counsel made. I don't know that. Mr. Sein, if I may. Can you offer me one possible tactical reason for doing it? When Wesley Sein, when Wesley Sein was pursuing this litigation, he was pursuing this, I submit, as a defense to this case because he knew, he knew what the evidence was. He knew he had not let him. Well, that's fine, but why would he agree to letting this, you know, evidence, this opinion, not the whole thing, which the judge refused to allow him because he understood that it was extremely prejudicial, but most of it or most of the adverse stuff in the form of questions rather than just, why didn't the judge just say stop, you can't do this? Well, because, Your Honor, he's put it in issue. He's the one, what Sein was really doing was trying to mislead the jury. Well, actually, he put it in issue in a way that wasn't contradictory. My understanding is all he said about Judge Carr was Judge Carr said some bad things about me. Oh, no, no. But he did more than that. Sein's whole defense, Sein, when he testified, was that he was a great guy who had never misled these people, and when they lost the money, he felt he had a moral obligation to go get it for them. I understand that. So he was... With regard to Judge Klein, Judge Carr, there was a concession that they could have gotten in, the fact that there was a criminal contempt, although I'm not sure that's so, but that's a concession. And he said, in the course of it, he said some bad things about me. Why does anything else come in about what Judge Carr said? Because that still leaves a misimpression with the jury that, oh, he's trying hard, and he's working at it, and he's almost there. Kenneth, there are rules of evidence. If you want to prove it's not so, then you prove what happened in Ohio. You don't introduce this opinion or most of this opinion by somebody else with a lot of extremely critical language in it, as well as a conclusion. Two things, Your Honor. We may – we perhaps could have sought to bring Judge Carr and have Judge Carr testify as to what he concluded in the court. He couldn't. He would be – what would he be competent to testify? Well, he would be able – he would be competent to say... I understand he's trying to paint the picture that I'm, you know, I'm trying to enforce these agreements, et cetera. And you're fairly entitled to counter that impression before the jury. But a lot of this stuff, I can – well, I thought it may in the end be not that significant, but it struck me, went way overboard. Your Honor, the questions that we asked were questions having to do with the litigation. It went to – the essence of the questioning was to establish that Sine had no chance of recovering money in Ohio, which is what he had told the jury. But how is it pertinent to that that Judge Carr used a fair amount of interpretive language, all of which may be perfectly justified within the context of that case? But to cross-examine people saying, didn't Judge Carr say you were a liar, a cheat, and a thief? I mean, that wasn't the language, but it was equivalent language. How is that pertinent to the question of whether or not he had this – he had a chance of recovering? Well, because if a court is concluding that, then he has no chance of recovering. It's directly relevant as to whether he has a chance of recovering. If all we had been able to establish was that he had been held in contempt, Sine would have been given the next – But he could also establish that he – what was the net result of that case? The net result? I don't know. The last we heard, Sine said he was going to appeal it. I understand that. But the case was dismissed from the merits. Is that not right? Which case? The Ohio case? The Ohio case. No, I believe that the case was still ongoing during the course of our trial. The exact result of that now I don't know because I've not kept up with it. But at the time it was ongoing because one of the things that Sine said he was going to do was appeal the district court's findings and was going to relay – Excuse me, what? He was going to appeal the district court's – I know, but I'm asking the district court. Was the litigation concluded, not only the contempt order, but the litigation? No, not to my knowledge. When exactly was the whole issue of this litigation raised? In what context? This was raised during the course of the defense. It was not raised by the government. And what happened was during the course of the defense – Was it raised in the opening of the defense or was it – I don't believe so, Your Honor. I believe that it came up closer towards the beginning of the defense because the government did not lie in wait. In fact, before the defense started calling their witnesses, I informed the court and defense counsel that if they intended to go into this area, I was going to question them about what happened in Ohio. So I believe that when I mentioned that, that was because I had gotten wind because of the witnesses that they were calling that this is what they were going to do. But I'm sorry, I did not look at the opening arguments and I don't know that he referenced it. I can't be sure on that. But it was not an issue that we raised, certainly during our direct. In fact, we considered before trial the possibility of trying to exclude testimony about this, but we were concerned that then we would be faulted for taking away his defense. The fact of the matter is, Sine is the one who has made this problem because Sine is the one that raised this issue. And what he was really trying to do was mislead the jury into thinking that he's just going – Well, presumably, you could have introduced the order that led to the criminal contempt, as judicial notice probably. You could have introduced the criminal contempt itself. You could have gotten witnesses in, or were the witnesses in Ohio, to testify as to what happened, why that was a phony operation. But I don't see how you get to introduce the opinion and the facts found by the district court. Is there any question for you of any case where something like this has been allowed? Your Honor, I did not cite a specific case, and I'm not aware of a specific case. But there are two things. First of all, just having established New York's contempt, if we had had – if we had called in someone from the Bank of New York to testify as to what happened, happened at court, Sine could have very well testified that isn't what happened. Exactly. He could have. That's exactly why you don't introduce somebody else's opinion as to what happened. No, but then a jury is left to wonder, well, what's going on in Ohio? Because on the one hand, Sine is saying that's not what happened. On the other hand, the Bank of New York people are saying it's what's happening. And so you end up with a confusion of the jury. The jury is left to wonder, well, what's going on in Ohio? And that was why the judge's opinion was the best, because it's clear he's losing in Ohio. The court – Everything said preliminarily to the district judge. Look, Judge, if you – he can raise this, but I want to put you on notice that if he does, the only way we can really counter it is to bring in all this. Now I think – at first I just couldn't figure out why anybody would allow all this, but it now occurs to me what I gather you're saying is that just letting in the fact that he was unsuccessful and that there was a contempt wouldn't necessarily undercut the notion that he was acting in good faith, the fact that he lost a case. A lot of people lose cases. Exactly. That is exactly right. Was anything said to the district judge in the beginning about what happened? You know, this is where we may be going down this road, Judge. Your Honor, I did mention it to the court at the very beginning and just said that if they intend to go into this area, I intend to ask him about the proceedings in Ohio. I believe the district court's opinion was, well, I presume defense counsel knows about that. And defense counsel said yes, and the judge said very well. Well, the proceedings is one thing. About what findings that were made and protruperative statements that were made is another thing. But, Your Honor, I mean, the fact of the matter is defense counsel, I believe I made it clear we were going to make an issue of the Ohio litigation. And as Judge Trager has just mentioned, just bringing out the fact that he had been unsuccessful, that he had been held in contempt, would not have been sufficient. And then if we brought in people from the Bank of New York to testify and cite them. Well, it wouldn't be sufficient because you wanted the jury to have Judge Carr's opinion or his conclusions about the mendacity of these people, which, you know, were quite persuasive. But that's the question. Isn't that just what's wrong with it? No, Your Honor, I do not believe it is wrong. I'm just trying to rely on a preclusion issue, and I wonder about that. A preclusion approach. I mean, this was all tried, apparently, beyond a reasonable doubt, and I don't know where that leads you. Your Honor, frankly, one of the thoughts I had during the course of the trial is this is a public record. The Court has made these findings. It's established. But we never argued this. The facts may have been established. You probably may have been able to introduce them as established. I don't know how you can establish against a defendant. Well, but the point is, Your Honor, and this, I believe, is a critical point, and that is we did not argue what defense counsel just said we argued. We did not argue to the jury that Judge Carr found he's a liar, so you have to conclude he was a liar. We never said that. We never said that. What we said was, what we said was that he tested that he – I recall it. There are two things. One is, during the course of the closing, I said, Mr. Sine claims that he didn't have – he really didn't have a chance to be heard in Ohio. Well, he testified long enough for Judge Carr to conclude he was a liar. I did say that. But I never said that you have to accept what Judge Carr said as being true. And the – and, in fact, the tagline of the argument with respect to Judge Carr's – with respect to the opinion in Ohio was, no one could believe that what is going on in Ohio is going to result in the recovery of money. And that was the tagline of the argument. So we have to establish to the jury that this talk that Sine was giving, that he was going to get this money back, that he was working and all the rest of it to get the money back and he was ultimately going to get it, if people would just get out of his way, it was untrue. He was never going to get anything out of that Ohio litigation. Are you suggesting – was that true before or after the Judge Carr opinion? Could it have been true before the Judge Carr opinion? Whether it – well, it would have been more in – I'm not sure I understand the Court's question. What I'm saying is he instituted those proceedings and he claims that he did it in good faith. Judge Carr concluded otherwise. You're saying that nobody could conclude that he did it in good faith, essentially. Correct. Why? Because Judge Carr so concluded. No, no, Your Honor. I believe there are a number of reasons. First of all, what Judge Carr concluded was not altogether different from what we  I mean, if you look at the other cases, the other cases that Judge Carr concluded and that they object to, we already would – was proved elsewhere. For example, he gets – Sine gets a judgment in Utah for $18 million and Don Meadows, who has no privity of contract with the victims, just rolls over and says, you can have $18 million. Who in the world does that? Then he takes the $3 million judgment and apparently uses that to get stock brokerage companies a mutual fund. Obviously. I mean, there's plenty of evidence against Judge – against Mr. Sine. The question is whether introducing at such length such a prejudicial document meant that he didn't get a fair trial and that he would have been a lot better off to just leave it out. Your Honor, Sine made a decision. I submit the argument that Sine was left to the wolves here by his defense counsel simply isn't so. Sine – when Sine is pursuing this litigation in Utah and pursuing it in Ohio, I submit he had in mind what his defense was going to be. He knew he had misled these people. He was indicted in February of 2002. He was interviewed by the FBI in December of 2001. He knows that he's in a lot of trouble. So he's – I submit he's thinking to himself, I'm going to pursue this. I'm going to pursue litigation. I'm going to try and get judgments. I'm going to try and convince a jury that I'm really trying for these victims. All right. It was all a charade in order to build a defense of good faith. Correct. But let me just – I've never seen a case quite like this in many years of dealing with this. But let's assume the judge hadn't rendered any opinion at that point. Mm-hmm. Okay? And then he comes up with this story, I'm litigating all this, et cetera. How would you try to meet the fact that he's not operating, this is all sham? How would you try to prove it? Under those circumstances, we could have taken one of two courses. We could have sought to exclude this evidence as irrelevant. If that had been unsuccessful, then – Obviously, it wouldn't be successful. That's a defense. So then we would have to try – we would then be stuck litigating the Ohio case in our case. Exactly. Right. Exactly. And what you were trying to do, what you did do, was avoid that by introducing someone else's conclusions about the facts in Ohio. Introducing statements that the court issued in that case, but arguing that no one could believe that what the judge said in Ohio, that no one could believe that what is happening in Ohio is going to lead to a recovery for these victims. And this is what I want to be very precise about. Is that because the judge having said this, there's no way they're now going to recover? Or is it because this judge found that the original litigation, filed before the judge found whatever he found, was bad-faith litigation from the get-go? There's a difference there. You look perplexed. I'm sorry. In other words, it was – it seems to me at points you're saying, well, it's relevant to know what Judge Carlin said, simply because Judge Carr said it. And him having said it, there's no way in the future they're going to get anything out of this lawsuit. But that doesn't seem to me to be really the point, because he's claiming that when he started that litigation, it was in good faith. It's – well, but his argument or his testimony was that if only left alone, he could get the money. He still could get it or he could have gotten it. He was leading the jury to believe that he was – if people would just get out of his way, if the Bank of New York would get out of his way, if assistant U.S. attorneys would quit submitting things in Utah, he'd be able to get this money. He testified about how he got money, and he talked about how there were millions still out there that he thought he could get. So he left – what he wanted the jury to come away with was that he was on the verge of getting some money. And I've referred to those references in the brief and his trial testimony on that. Do you think counsel may have been sandbagging a little bit here by not raising an objection to it? It's conceivable. But, frankly, Your Honor, even if we had gotten an instruction from the court to say that, you know, this is being introduced not for the truth of the matter but just to let you know what the status is of the case in Ohio, I suspect, as sure as I'm standing here, the argument that would be made is that this instruction was entirely ineffectual, that this testimony was so prejudicial it didn't save the day. So I don't know that an instruction would make any difference. And, frankly, I submit the issue is not whether there could have been an instruction. The issue is what is the standard of review, and it's plain error. And I believe that looking at this evidence, all of the evidence against Sine – you know, for example, the defense has said that Sine really thought the – Oh, excuse me. You seem – I thought you were arguing that the evidence was proper, primarily. I believe that it is proper, Your Honor. I mean, in one – in a sense, if someone had – if we tried to call Judge Carr, I don't know that we would have been permitted to – I don't know what the district court would have ruled on that, and I don't know what position Judge Carr would have taken with respect to that. But our position is that this evidence was not impermissible to come in, however it came in. And if Judge Carr testified, I'm sure that defense would have had one heck of a time trying to cross-examine him based on the findings that he made. And so the position – our position is the evidence coming in was not impermissible. If there had been a limiting instruction, I submit it wouldn't have made any difference. Well, why didn't Judge Carr testify? Well, I – the government's position would have been at that time – well, I – we would have sought it, whether the district judge would have allowed it. I don't know. You know of any case in which a judge was allowed to come into a different case and testify as to his conclusions in a different case? I believe during the course of – I came across one or maybe two cases where it was permitted. I know one where this circuit didn't allow it, which is Chain v. Chomsky, but it was not exactly on that ground. Yeah. It's very limited – very limited circumstances. But the point was that I believe that this evidence was – for the jury to hear it was permissible for the jury to hear it. And whether there had been a limiting instruction wouldn't have made any difference because the argument would still be the same. The issue is whether or not there was plain air. And I submit that when you look at all of the evidence in this case, I mean, Sine's involvement, what Sine was telling people, Sine was not just some passive trustee. For example, Mark Griffin testified that when he was representing a client who was interested in the program, he went to Sine's office and Sine said that, yes, you can earn a fabulous return. He didn't use those terms, but it was like 50 percent or 60 percent in 90 days or something like that. He assured Griffin that he could liquidate these Ginnie Mae's. In fact, he led Griffin to believe that he actually had the Ginnie Mae's certificates when he did not. He never had them. And when Griffin said, well, I want to see the Ginnie Mae's certificates. But that's not a substantial rights argument, which is a different argument than the one you've been making for the most part. No, it has to do with the plain air. I mean, it goes to whether or not there was sufficient – whether there was – whether the reference to Judge Carr's order significantly affected the fairness of the trial. And my point is there is overwhelming evidence in this case. And that's what the district court found. And the district court – the district court, in a very vivid recollection, described what happened when Sine was on the stand. And he was being questioned about how they were taking later investors' money and giving it to earlier investors. A clear-ponded scheme. And Sine's comment was, oh, I call that refinancing. And as the judge said, the temperature in that courtroom went down 20 degrees. I never understand why the government jeopardizes what should have been a fairly easy conviction with something as unusual as this. Your Honor, when a defendant is up there saying that I'm litigating hard and I'm trying to get money and I'm on the verge of getting money, I believe the government has the right and needs to establish to a jury that that's not true. He is not on the verge of getting money. He's not – he's not doing what he's supposed to be doing. He's doing things down in Ohio that is just victimizing other people. I think the government has a right to bring that out. Thank you very much, Your Honor. Yes. Thank you, Your Honor. I would like to hear from the Wonder Warrior. We'd like to hear from – Yes. We'd like to hear further for, say, two minutes on this question. And I guess the question is, see, at first I thought this was just so strange that this was allowed in. But what about his argument essentially that, you know, just stipulating that he was found in contempt and the judge, you know, didn't like him or didn't have nice things to say, would not effectively have countered his ultimate defense that I'm acting in good faith and only bringing in everything would the picture be balanced? Well, Your Honor, I don't believe that to be the case. Well, how would the prosecutor, if he had been left out, and you make a summation, basically he's brought a lawsuit, he's trying to, as best he can, and they're just accusing him of all these terrible things, but if they would just let him go forward, he would, you know, he was just acting in good faith. How would the government in their rebuttal answer you? What would they have been left, that you conceded he didn't win? Well, I did the best I could. Right. Well, you have the rules. Certainly, he could have proceeded under the rules, cross-examined and said, well, it's true that you brought this, it's true that you're unsuccessful, and so on, and ended it there. I mean, the problem is that, and I refer the Court to the actual quotes that he used, and that is, is that he, in fact, used, for example, in closing the argument, Sine testified for Judge Carr and it didn't take him long to conclude that Sine was a liar. I mean, that kind of stuff where you're basically using him as an opinion witness in this case, and, well, he was a liar before Judge Carr, he must have been a liar here. You know, the point is that they clearly overstepped their bounds. There's a way to cross-examine within the rules, and the government didn't do that. They didn't stop an inch over the border or even a mile over the border. I mean, it just came in in reams and reams and reams, and that's the problem here. I mean, it's just a matter of degree, and that is, you know, you have a, you have, within the rules, latitude to certainly, you know, test the testimony that's been presented, but they, here they didn't do that. They just went to such excess that it was plain error. And how do you deal with the plain error, the district judge finding overwhelming evidence? Well, and again, that, in the beginning of my presentation, if you look at, you know, the testimony regarding Sign, most of the people, with, you know, one or two exceptions, didn't have any contact with Sign until this litigation, this post-Pentaki litigation to collect began. Most of the evidence about Sign revolved around this satellite or collateral issue of the Judge Carr thing, you know, 2,000 or 200 references and so on. But that was the bulk of it, and so our argument is because most, not all, there was some limited other testimony regarding Sign, because Sign really didn't become involved until later in the process, until he actually. But he was involved in the whole scheme, and there was evidence about the scheme. I understand. Well, there was evidence. There were, there was limited evidence that he had talked to two or three other witnesses prior to and made representations, yes, the security is real and this kind of thing. The security is real, the Pentaki pays back the loans, nobody's had a problem. Based on my experience and so on, you have limited testimony there, but the bulk, you know, 80, 90 percent of the testimony surrounds the Judge Carr issue. I mean, that is really the bulk of the testimony at trial regarding Sign was Judge Carr and what happened and all of the nuances regarding that. How long was the jury out in this case? One hour. One hour. They asked for any evidence? No. Okay. And, in fact, a judge, when the trial court judge did make the comment, when discussing Judge Carr, he was saying, well, you know, they've got an opinion of another judge saying that this guy's a liar, it's not going to take them long on this case. I mean, he made an offhanded comment like that, and, in fact, it did, so. Thank you very much. Thank you, counsel, for a useful argument in a difficult case. We will recess for the day. Thank you.
judges: B. Fletcher, Berzon, Trager